## PIONEER OIL & REFINING CO. et al. v. STATE.  (No. 6856.)

(Court of Civil Appeals of Texas. Austin. May 4, 1925. Rehearing Denied May 27, 1925.)

**1. Licenses �kö 16(9)—Levy of occupation tax on gasoline sales held authorized by statute.**

Acts 38th Leg. (1923) c. 134, authorized levy of occupation tax of one cent per gallon of gasoline sold at retail for consumption within state.

**2. Statutes �kö 64(8)—Right to collect occupation tax on gasoline sales did not survive express repeal of act authorizing it, though act containing repealing clause is unconstitutional.**

State's right to collect occupation tax on retail sales of gasoline, under Acts 38th Leg. (1923) c. 134, did not survive unconditional, express repeal of such act by Acts 38th Leg. 2d Called Sess. (1923) c. 55, §§ 6, 8, 9, without saving clause as to taxes theretofore accrued under repealed act, even if repealing act violates uniformity and equality clause of Constitution, in view of recital in caption that decision invalidating any part of act shall not affect remainder.

**3. Statutes ⊦kö 64(1)—Repealing clause falls with unconstitutional law containing it, if intended to displace old law with new.**

Repealing clause in statute may be valid, though every other clause is unconstitutional, if such is plain legislative intent, but where evident purpose of repeal is to displace old law with new, repealing section falls if new law is unconstitutional.

**4. Taxation ⊦kö 58—Right to collect tax ceases on repeal of statute authorizing it, unless directly or impliedly preserved.**

Right to collect tax ceases, when statute on which it depends is repealed, unless repealing law directly or by fair implication preserves right.

**5. Licenses ⊦kö 8(2)—Act, repealing statute authorizing occupation tax on gasoline sales, not unconstitutional as extinguishing obligation to state.**

Acts 38th Leg. 2d Called Sess. (1923) c. 55, § 9, repealing Acts 38th Leg. (1923) c. 134, authorizing occupation tax on retail sales of gasoline, held not void as extinguishing indebtedness, liability, or obligation to state, in violation of Const. art. 3, § 55.

**6. Licenses ⊦kö 8(2)—Occupation tax not debt to state within constitutional inhibition of repeal, though liability is personal and enforceable in action of debt.**

A tax due state, as well as ad valorem tax due municipality, is not technically a debt, nor is obligation to pay it a contract creating vested right, not repealable, under Const. art. 3, § 55, though liability is personal, and action of debt may be maintained for its collection.

**7. Licenses ⊦kö 8(2)—Accrued tax on gasoline sales not saved from repeal of act authorizing them by saving clause following repealing clause of Revised Statutes.**

Rev. St. 1911, final title, § 5, does not save occupation taxes accrued under Acts 38th Leg. (1923) c. 134, on retail sales of gasoline, from repeal by Acts 38th Leg. 2d Called Sess. (1923) c. 55, § 9, but refers solely to repeals mentioned in Rev. St. 1911, final title, § 4.

**8. Licenses ⊦kö 8(2)—Accrued occupation tax on gasoline sales not saved from repeal of act authorizing them by saving clause of act repealing both prior acts.**

State's right to collect tax on gasoline sales having been extinguished by repeal of Acts 38th Leg. (1923) c. 134, by Acts 38th Leg. 2d Called Sess. (1923) c. 55, § 9, could not be revived by subsequent legislation, such as Acts 38th Leg., 3d Called Sess. (1923) c. 5, § 12, saving taxes accrued under chapter 55 and other prior laws on subject from effect of repeal thereof, as no tax law can operate retroactively.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the State of Texas against the Pioneer Oil & Refining Company and another to recover gasoline tax. From a judgment for part of taxes sued for, defendants appeal. Reversed and rendered.

M. L. Roark, of San Antonio, D. C. Proctor, of Houston, and Batts & Brooks, of Austin, for appellants.

H. O. Caster, of Bartlesville, Okl., and Phillips, Trammell & Chizum, of Fort Worth, amici curiæ.

W. A. Keeling, Atty. Gen., and Frank M. Kemp, Asst. Atty. Gen., for the State.

BLAIR, J. The state instituted this suit against appellants, Pioneer Oil & Refining Company and the Slimp Oil Company, asserting the right under chapter 134, Acts 38th Legislature, Regular Session, to recover a tax of one cent on each gallon of gasoline sold by them for consumption within this state during the months of April and May, 1923. The court tried the case on stipulations covering the material facts, and from adverse judgments for a part of the taxes sued for each of the appellants has perfected an appeal.

[1, 2] The judgments are based upon a construction of chapter 134 as authorizing the levy of an occupation tax of one cent on each gallon of gasoline sold by any dealer at retail for consumption within this state. This construction of the act by the trial court is, in our opinion, correct. The judgments also reflect the proper amount of taxes due by each of the appellants as measured by sales at retail shown by the stipulations, and should be affirmed, unless the

unconditional repeal of the act without a saving clause as to the taxes sued for bars the state's right to collect them. We have concluded that the Legislature did not intend that the state's right to collect the taxes sued for should survive the unconditional and express repeal of the laws under which that right arose.

Three acts were passed by the 38th Legislature, each imposing some character of tax on the sale of gasoline. Chapter 134 was the first act and became effective April 1, 1923. Prior to this act there was no law in Texas imposing a tax on the occupation of dealing in gasoline. This act was passed at the regular session, and was known as "House Bill No. 12." The second act was chapter 55, passed at the second called session, and became effective June 4, 1923. The act was known as "House Bill No. 109," and section 9 repealed eo nomine "House Bill No. 12," which is chapter 134, acts of the regular session, and contained no saving clause as to taxes, which had accrued under chapter 134 before the repealing act became effective. The third act was chapter 5, passed at the third called session, and became effective June 14, 1923. This act repealed eo nomine "House Bill No. 109," which is chapter 5, acts second called session, and all other laws on the subject, with the following saving clause:

"Sec. 12. The act passed at the Second Called Session of the Thirty-Eighth Legislature, being House Bill No. 109, levying an occupation tax based on sales of gasoline, and any other law heretofore enacted levying such an occupation tax, is hereby repealed: Provided, that if any officer was charged with the duty under any such prior law to bring suit or collect or enforce collection in any manner of any such occupation tax, penalties or interest, such officer shall discharge such duty at any time hereafter as to any such taxes, penalties or interest accruing under any such prior law before its repeal, according to such prior law, notwithstanding the repeal of any such prior law either by this act or any other act, and any and all provisions of any such prior law as to acts or omissions done or performed while such prior law was in effect shall remain in effect as to such acts or omissions: Provided, that no penalties shall accrue on tax that has not been paid until this act becomes effective."

The state first contends that chapter 55 is void as being violative of the uniformity and equality clause of the Constitution, and being a void act cannot repeal chapter 134. Probably chapter 55 is void for the reason advanced, but that fact does not dispose of the case, unless the repealing clause is also void and falls with the void statute. The repealing act recites in its caption, "that if any part of this act be declared ineffective, such decision shall not affect the remaining provisions." The Legislature's intention to unconditionally and expressly repeal chapter

134 is found in the following sections of the repealing act:

"Sec. 6. The tax hereby imposed shall be in lieu of all other occupation taxes on the sale of gasoline or any of its substitutes and all laws or parts of laws heretofore enacted and in conflict herewith are hereby repealed. * * *"

"Sec. 8. If any section or provision of this act shall be held void and of no effect such construction shall not affect the remaining sections or provisions of this act which shall remain in full force and effect.

"Sec. 9. That House Bill No. 12, Acts of the Thirty-Eighth Legislature, Regular Session, effective April 1, 1923, be, and the same is hereby in all things expressly repealed."

[3] It is a well-settled rule of law that a repealing clause in a statute may be valid although every other clause is unconstitutional, if such is plainly the legislative intent. The following quotation, from Sutherland on Statutory Construction, correctly states the test of the rule:

"A repealing clause in a statute may be valid although every other clause is unconstitutional, if such is plainly the legislative intent. But where the repeal is intended to clear the way for the operation of the act containing the repealing clause, thereby showing the intention to displace the old law with the new, if the latter is unconstitutional, the repealing clause would be dependent and inoperative. Where the evident purpose of the repeal is to displace the old law and substitute the new in its stead, the repealing section or clause being dependent upon that purpose of substitution, necessarily falls when falls the main purpose of the act."

The authority (25 Ruling Case Law, § 166) also states the rule as follows:

"Where a repeal of a prior law is inserted in an act in order to secure the unobstructed operation of the act, and the repealing law is itself held to be void, the provisions for the repeal of the prior law will fall with it, and will not be operative in the repeal of the prior law, unless the language of the repealing clause is such as to leave no doubt as to its intention to repeal a former law, in any event. Where, however, it is not clear that the Legislature, by a repealing clause attached to an unconstitutional act, intended to repeal a former statute upon the same subject, except on the supposition that the new act would take the place of the former one, the repealing clause falls with the act of which it is a part."

The authorities without doubt sustain these texts. The test of the rule seems to be not so much what the general rule of construction is, but that the rule must be understood and applied so as to ascertain the legislative intent. Commonwealth v. Mortgage Co., 227 Pa. 163, 76 A. 5; G. & W. R. Co. v. Galveston, 96 Tex. 520, 74 S. W. 537. The effect of the rule is that, if there can be found in the acts of the Legislature, either directly or by fair implication, the intention on its part to continue in

force any accrued rights under a repealed statute, the right will be enforced. Clegg v. State, 42 Tex. 605. The state relies on this case to sustain its contention here made. That case is easily distinguishable from the case at bar. The acts of the Legislature there construed clearly evidenced the intention to preserve to the state the right to collect the taxes, which had accrued under the repealed act, before the repealing act became effective, for there was no unconditional repeal of the pre-existing tax laws, and the right was actually and expressly preserved to the state to recover the back taxes, which had accrued under the previously existing laws. So that case furnishes no authority for the case here, but correctly applies the rule, having first ascertained the intention of the Legislature.

[4] A universal general rule of statutory construction is that where a right to collect a tax depends upon a statute, which has been repealed, the right ceases to exist, unless the repealing law directly or by fair implication preserves that right. Sutherland Stat. Const. § 165; 24 Cyc. 613; 25 R. C. L. § 193; Galveston & W. R. Co. v. Galveston, 96 Tex. 520, 74 S. W. 537; Bryan's Adm'r v. Harvey's Adm'r, 11 Tex. 311; Clegg v. State, 42 Tex. 605; State of Texas v. T. & N. O. R. Co., 58 Tex. Civ. App. 528, 125 S. W. 53; Galveston, H. & H. R. Co. v. Anderson (Tex. Civ. App.) 229 S. W. 998; Goodrich v. Wallis (Tex. Civ. App.) 143 S. W. 285; Stewart v. Lattner, 53 Tex. Civ. App. 330, 116 S. W. 860; Gulf, C. & S. F. R. Co. v. Lott, 2 Willson, Civ. Cas. Ct. App. § 63; Crow v. Cartledge, 99 Miss. 281, 54 So. 947, Ann. Cas. 1913E, 470; Ex parte McCardle, 7 Wall. 506, 19 L. Ed. 265; Corley v. Sewell, 77 Ind. 316; McQuilkin v. Doe, 8 Blackf. 581; Bleidorn v. Abel, 6 Iowa, 5; Commonwealth v. Mortgage Co., 227 Pa. 163, 76 A. 5.

The following quotation from additional authorities on the general subject of the effect of the unconditional repeal of a tax statute show the universality of the rule:

"A statute imposing a system of license taxes operates to repeal an existing statute relating to the same subject, when it contains an express provision for such repeal; but there can be no repeal by implication, unless the statutes are in their provisions utterly inconsistent and repugnant." 25 Cyc. p. 613.

"Where a right given by a statute is not by nature a vested right, and at the time of the repeal of the statute has not been reduced to judgment, or otherwise executed, it will fall with the statute, unless expressly excepted." 36 Cyc. p. 1226.

In Ann. Cas. 1913E, on page 470, a very exhaustive note appears, in which it is said:

"It is a well-settled rule, with which the reported case is in accord, that in the absence of any special provision therefor, the repeal of a statute which imposes a license fee or tax has the effect of abrogating all rights to the collection of a license fee or tax obtained under the statute as effectually as if it had never been in force."

The rule has been adopted in Texas, and is well and tersely stated in G. & W. R. Co. v. Galveston, 96 Tex. 520, 74 S. W. 537, as follows:

"It is a well-settled rule of law, that when a right depends solely upon a statute which is repealed, the right ceases to exist unless by the terms of the repealing law the right claimed is either directly or by fair implication preserved, in which case the repeal of the statute will not destroy the right claimed thereunder. Town of Belvidere v. The W. R. Co., 34 N. J. Law, 193; Gorley v. Sewell, 77 Ind. 316."

Applying these rules to the legislative acts here involved, we think it clear that that body did not intend to preserve any right to the state to collect the taxes sued for. The language of the repealing section is unconditional and absolute. No effort whatever is made to save the state any accrued rights under the repealed law. In order to safeguard each provision or section of the repealing act, which necessarily includes the repealing section, the Legislature provided that if any part or section be declared inoperative that the other parts or sections shall remain. So, if all the act is unconstitutional, except the repealing section, it is safeguarded against being declared inoperative with the other clauses by reason of this provision. The Legislature, according to the stipulations on file, knew at the time it repealed the act that much doubt and uncertainty had arisen concerning a construction of the language used in the repealed act, and that alone furnishes a potent reason why they intended to repeal the act, and to destroy and extinguish any accrued rights thereunder. The repealing act in no way attempts to save the penalties and fines provided in the repealed act, nor to continue in force the method or machinery provided for the collection of the tax. The repeal is complete, without any limitations or qualifications, and we think that the clear intention of the Legislature was to destroy or extinguish the right of the state to collect the taxes sued for, unless it is beyond the authority and power of the Legislature to destroy and extinguish the state's accrued right in the taxes, which the state next contends the Legislature could not do.

[5] The second contention of the state is that section 9, the repealing section, is void, because violative of section 55, article 3 of the Constitution, which reads:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this state, or to any county or other municipal corporation therein."

By this proposition, we do not understand that the state contends that it is beyond the power of the Legislature to repeal a tax law once enacted; but the contention is that, while it may repeal the law, it cannot destroy or extinguish the obligation to pay the tax accruing to the state before the repealing law became effective, urging that to do so would be violative of the above-quoted provision of the Constitution. Tersely stated, the state's contention is that the above provision of the Constitution is an absolute inhibition against the authority or power of the Legislature to extinguish or release a tax once accruing to the state. In support of this contention the case of Ollivier v. City of Houston, 93 Tex. 206, 54 S. W. 940, is cited. We cannot agree that the case cited is authority for the broad general proposition made by the state in this case. The court in that case was dealing with a limitation statute concerning an ad valorem tax, which effectively remitted the taxes of one-tenth of the taxpayers affected after nine-tenths of them had already paid their portion of the taxes. It is shown that the taxes had been legally levied and assessed for more than four years. It was also shown that the taxes in that suit had become a lien upon the property sought to be subjected to the payment of the taxes, and that one-half of the taxes was to go to pay outstanding bond indebtedness of the city. It may also be noted that the taxes, sought to be collected in that suit, were a municipal tax of a city, whose charter expressly declared that the owner of the property, against which the taxes were levied and assessed, was personally liable for their payment. These facts distinguish the case from the instant case, since the tax imposed by chapter 134, sought to be collected here, is not an ad valorem tax, which has been duly levied and assessed; but is a license or occupation tax, which had never been reported under the provisions of the law authorizing the state to collect it. Texas Co. v. Stephens, 100 Tex. 628, 103 S. W. 481. The record in the instant case does not disclose whether or not any taxes had been collected under chapter 134, either before or after its repeal, so the equitable situation existing between the taxpayers in the Ollivier v. City of Houston suit does not exist here.

[5] The rule is well settled in this state "that a tax due by a citizen to a city is not technically a debt, nor is his obligation to the city to pay it, a contract, though the weight of authority is to the effect that the liability is a personal one and an action of debt can be maintained for its collection." City of Henrietta v. Eustis, 87 Tex. 14, 26 S. W. 619, and authorities there cited.

This rule, of course, applies alike to an occupation tax due the state as it does to a municipal ad valorem tax due a municipality. We cite the rule here, and the fact that appellants had not reported the taxes in question for the purpose of showing that they had not by their acts become in any way obligated to pay the taxes other than as the provisions of the law authorizing the tax imposed liability. We also cite it for the purpose of showing that our courts have not considered the mere statutory right to collect a tax in the nature of a vested right, the repeal of which is inhibited by the constitutional provision in question. The court in the case of Ollivier v. City of Houston, supra, quoted this rule with approval, but held it inapplicable to the facts in that particular case.

To hold, as contended for by the state that this provision of the Constitution inhibits the Legislature from ever forgiving a tax, or extinguishing the right of the state to collect a tax authorized and accrued under a repealed law, would be nothing less than rendering nugatory and void the rule expressly adopted by our Supreme Court in at least three cases in which it is expressly held that the repeal of a tax measure, without a saving clause, terminates the right to collect taxes thereunder. Galveston & W. R. Co. v. Galveston, 96 Tex. 520, 74 S. W. 537; Bryan's Adm'r v. Harvey's Adm'r, 11 Tex. 311; Clegg v. State, 42 Tex. 605.

It would also render nugatory and void the recognized and applied doctrine announced by our Texas courts in the following cases, to the effect that the repeal of a law, without a saving clause destroys the right thereunder not vested or fixed, even where the state was suing for an "indebtedness, obligation or liability." State of Texas v. T. & N. O. R. Co., 58 Tex. Civ. App. 528, 125 S. W. 53; Galveston, H. & H. R. Co. v. Anderson (Tex. Civ. App.) 229 S. W. 998; Goodrich v. Wallis (Tex. Civ. App.) 143 S. W. 285; Stewart v. Lattner, 53 Tex. Civ. App. 330, 116 S. W. 860; Gulf, C. & S. F. R. Co. v. Lott, 2 Willson, Civ. Cas. Ct. App. § 63.

We think the repealed act itself, and the stipulations on file, show that the Legislature knew that they had really made a bad job of this legislation. The fact that they repealed the law unconditionally and without a saving clause indicates their intention to correct the mistakes and unwise legislation by starting anew. This was certainly within the proper sphere of the Legislature, and their right in this respect is not prohibited by the provision of the Constitution inhibiting the release or extinguishment of any indebtedness, liability, or obligation accrued to the state. To so hold would seriously hamper the right of the Legislature to repeal unwise laws, and to enact proper ones in their stead. Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419.

Adverting to out of state authorities on this question, we find the case of Crow v. Cartledge, 99 Miss. 281, 54 So. 947, Ann.

Cas. 1913E, 470, deciding the identical question here raised, against the state's contention. The Mississippi Constitution contained a clause very similar to section 55, article 3 of our Constitution here invoked. That case arose under a similar state of facts to this case. The court disposed of the case in the following language:

"It is contended for the appellant that in this state of case the repeal of section 3855 abrogated the right of the state to collect any privilege taxes due thereunder. The effect of a repealing statute of this character is to abrogate the repealed statute as completely as if it had never been passed. It is considered as a law which never existed, except for suits which were commenced and concluded while the repealed law was in force. By the repeal, the right to collect the unpaid tax was taken away, whether suit was pending therefor or not. The cause of action was taken away, and the suit must end. Bradstreet Co. v. City of Jackson, 81 Miss. 233, 32 So. 999."

This case is annotated by the authority Ann. Cas. 1913E, 470, where the text-writer approves the holding and presents a thorough research of all the authorities supporting the Mississippi case.

[7] The third contention of the state is that although section 9 of chapter 55 did specifically repeal chapter 134 without a saving clause as to taxes which accrued under the repealed law before the repealing law became effective, still the taxes sued for are saved and not forgiven or extinguished, because it is asserted that section 5 of the final title to the 1911 Revised Statutes operates as a general statute preserving the state's right to collect the taxes. This contention cannot be sustained. Sections 4 and 5 of the final title to the 1911 Revised Statutes read:

"Sec. 4. Repealing Clause.—That all civil statutes of a general nature, in force when the Revised Statutes take effect, and which are not included herein, or which are not hereby expressly continued in force, are hereby repealed.

"Sec. 5. Repeal Does Not Affect, What.—That the repeal of any statute, or any portion thereof, by the preceding section, shall not affect or impair any act done, or right vested or accrued, or any proceeding, suit or prosecution had or commenced in any cause before such appeal shall take effect; but every such act done, or right vested or accrued, or proceeding, suit or prosecution had or commenced shall remain in full force and effect to all intents or purposes as if such statute, or part thereof so repealed, had remained in force, except that where the course of practice or procedure for the enforcement of such right, or the conducting of such proceeding, suit or prosecution shall be changed, the same shall be conducted as near as may be in accordance with the Revised Statutes."

It is clear that the saving clause as contained in section 5, supra, refers solely to the repeals mentioned in section 4, supra,

and was not intended by the Legislature to operate as a general saving clause to any and all acts repealed by future Legislatures.

[8] Finally, the state contends that its right to collect the tax sued for was saved by the provisions of section 12, chapter 5, Acts Third Called Session of the 38th Legislature, which section we have already quoted in this opinion. A complete answer to this is that since we are holding that the right of the state to collect this tax has been repealed and extinguished, it follows that this right could not be revived by subsequent legislation, under the well-known constitutional provision that no tax law can be made to operate retroactively.

From what has been said, we reverse the judgments of the trial court, and here render judgment for appellants.

We wish to express to counsel for all parties to this suit and to counsel filing a brief of amicus curiæ our appreciation for the excellent briefs filed in this case, and for the thorough research of the authorities submitted in support of their respective contentions.

Reversed and rendered.